Justice Souter,
with whom Justice Stevens and Justice Ginsburg join, dissenting.
The issue in this habeas case is whether it was objectively reasonable for the state court to find that there was no reasonable likelihood that the jury convicted respondent Cesar Sarausad on a mistaken understanding of Washington law. The underlying question is whether the jury may have thought it could find Sarausad guilty as an accomplice to murder on the theory that he assisted in what he expected would be a fistfight, or whether the jury knew that to convict him Washington law required it to conclude Sarausad aided in what he understood was intended to be a killing.
So far as the instructions addressed these alternatives, the judge charged the jurors in these words:
“A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
“(1) solicits, commands, encourages, or requests another person to commit the crime or
“(2) aids or agrees to aid another person in planning or committing the crime.” App. 17.
The majority answers the underlying question by relying on the general rule that incorporating a clear statute into a jury charge almost always produces an adequate instruction, which the jury is assumed to follow. The kicker of course is that the general rule is only good if the incorporated statute *198 is clear enough to require the jury to find facts amounting to a violation of the law as correctly understood.
Does the rule apply here? The majority says it does. It says the instruction quoted is unambiguous because it parrots the language of the Washington statute on accomplice liability, ante, at 191, and that “[i]t is impossible to assign any meaning to this instruction” and, by extension, the statute, “different from the meaning given to it by the Washington courts,” ibid.
That is not, however, what the record shows. Rather than a single understanding, the Washington courts have produced a record of discordant positions on the meaning of the statute, and the Washington Court of Appeals can itself attest to a degree of difficulty in understanding the statutory requirement sufficient to show the statute to be ambiguous and the statute-based instruction constitutionally inadequate: that court read the statute to mean just the opposite of what the majority now claims it unambiguously requires.
On Sarausad’s direct appeal in 1998, the State Court of Appeals set out the principles on which it understood accomplice liability in Washington to be premised. It did not say that the accomplice must understand that he is aiding in the commission of the same offense the principal has in mind, or the offense actually committed. Instead, the Washington Court of Appeals said this:
“(1) To convict of accomplice liability, the State need not prove that principal and accomplice shared the same mental state, (2) accomplice liability predicates criminal liability on general knowledge of a crime, rather than specific knowledge of the elements of the principal’s crime, and (3) an accomplice, having agreed to participate in a criminal activity, runs the risk that the primary actor will exceed the scope of the preplanned illegality.” State v. Ronquillo, No. 35840-5-I etc. (Mar. 2, 1998), App. to Pet. for Cert. 233a, 258a-259a.
*199 In support, the court cited State v. Davis, 101 Wash. 2d 654, 682 P. 2d 883 (1984), in which the Supreme Court of Washington noted that “an accomplice, having agreed to participate in a criminal act, runs the risk of having the primary actor exceed the scope of the preplanned illegality.” Id., at 658, 682 P. 2d, at 886. As today’s majority notes, ante, at 186, the state appellate court remarked that the Washington law of accomplice liability (as it then understood it) “ ‘has been reduced to the maxim, “in for a dime, in for a dollar” ’ the court also held that “it was not necessary for the State to prove Sarausad ... knew that there was a potential for gun-play that day.” State v. Ronquillo, supra, at 235a, 266a. So much for the majority’s confidence that the statute-based instruction can only be understood as requiring what the State Supreme Court now says it requires: proof that the accomplice understood that he was aiding in the commission of the very crime he is charged with facilitating.
The State Supreme Court clarified this requirement two years after the Court of Appeals held against Sarausad. In State v. Roberts, 142 Wash. 2d 471, 14 P. 3d 713 (2000), the Supreme Court of Washington held that the Court of Appeals’s “in for a dime, in for a dollar” view of accomplice liability was a misreading of the statute and a flatout misstatement of law. In Roberts, the State Supreme Court revisited Davis, which it explained as standing for the principle “that an accomplice need not have specific knowledge of every element of the crime committed by the principal, provided he has general knowledge of that specific crime.” 142 Wash. 2d, at 512, 14 P. 3d, at 736. Although a “general knowledge” of “that specific crime” intended by a confederate and eventually committed will suffice for the mental element of accomplice liability, mere “knowledge by the accomplice that the principal intends to commit ‘a crime’ does not impose strict liability for any and all offenses that follow.” Id., at 513,14 P. 3d, at 736. In other words, it was incorrect *200 to read the statute as the Supreme Court of Washington had arguably done in Davis (and the State Court of Appeals certainly did in this case), to mean that anyone who agrees “to participate in a criminal act.. . runs the risk of [accomplice liability for a more serious crime if] the primary actor exceed[s] the scope of the preplanned illegality,” 101 Wash. 2d, at 658, 682 P. 2d, at 886. The reductive maxim “in for a dime, in for a dollar” was now understood to be a distortion of Washington’s accomplice-liability law.
The Washington Court of Appeals said as much when Sarausad appeared before it the second time, seeking post-conviction relief: “[Sarausad] points out, and correctly so, that this court decided [his direct] appeal on the premise that ‘in for a dime, in for a dollar’ correctly characterized Washington accomplice liability law. We said that ‘an accomplice, “having agreed to participate in a criminal act, runs the risk of having the primary actor exceed the scope of the preplanned illegality.””' Sarausad v. State, 109 Wash. App. 824, 833-834, 39 P. 3d 308, 313 (2001). The Court of Appeals said that it had “erred” in determining that it was unnecessary for the State to prove Sarausad knew he was facilitating a driveby shooting. Id., at 837, 39 P. 3d, at 315.
This profession of judicial error in understanding the law is the touchmark not of a clear statute, but of an indistinct or perplexing one, which the law calls ambiguous. The majority is thus unquestionably mistaken in finding it “impossible to assign any meaning to [the instruction quoting the statute that is] different from the meaning” the majority thinks is clear. Ante, at 191. Given that error on the majority’s part, it has not justified its reversal of the Ninth Circuit by showing that the instruction was clear.*
*201 There remains the question whether the majority’s second conclusion is also unjustifiable: despite inadequate instruction, did the jurors nevertheless apply the correct view of state law, which only recently, and after the trial, attained its current clarity? . The state postconviction court found no reasonable likelihood that the jurors failed to apply a correct understanding of accomplice liability, Sarausad v. State, supra, at 843-844, 39 P. 3d, at 318-319, and Sarausad’s burden here (on federal habeas) is to demonstrate that the state court was objectively unreasonable in drawing this conclusion, 28 U. S. C. § 2254(d)(1). The District Court and the Ninth Circuit found he had done just that, whereas the majority today insists those courts were wrong.
The majority’s position is simply unrealistic. Even a juror with a preternatural grasp of the statutory subtlety would have lost his grip after listening to the prosecutor’s closing argument, which first addressed the state law of accomplice liability with a statement that was flatout error, followed that with a confusing argument that could have reflected *202 either the correct or the erroneous view, and concluded with an argument that could have fit either theory but ended with a phrase defined to express the erroneous one.
In her first pass at the subject, the prosecutor said unequivocally that assaultive, not murderous, intent on Sarausad’s part would suffice for the intent required of an accomplice to murder.
“Let me give you a good example of accomplice liability. A friend comes up to you and says, ‘Hold this person’s arms while I hit him.’ You say, ‘Okay, I don’t like that person, anyway.’ You hold the arms. The person not only gets assaulted, he gets killed. You are an accomplice and you can’t come back and say, ‘Well, I only intended this much damage to happen.’ Your presence, your readiness to assist caused the crime to occur and you are an accomplice. The law in the State of Washington says, if you’re in for a dime, you’re in for a dollar. If you’re there or even if you’re not there and you’re helping in some fashion to bring about this crime, you are just as guilty.” App. 38.
Thus, in what the majority would launder into “one problematic hypothetical,” ante, at 195, the prosecutor introduced the “in for a dime, in for a dollar” locution, which she defined to mean that readiness to aid in the commission of any crime thought to be intended by the principal is enough intent for accomplice liability for whatever crime the principal actually commits. This leadoff misstatement of the law, never corrected by the trial judge, infects every further statement bearing on accomplice law the prosecutor made, for into each effort she consistently introduced the viral catehphrase “in for a dime, in for a dollar.”
In a second reference to accomplice law, the prosecutor discussed gang mentality and used the phrase, without modifying her earlier explanation of its legal meaning, then followed up with a reference to the evidence that could have fit *203 either the erroneous theory or the law as corrected by Roberts:
“Mr. Sarausad [was] present and . . . certainly ready to assist. And I remind you, too, what you heard not only from . . . the gang expert in this case, but from [gang] member after [gang] member who told you that an affront to one is an affront to all, 'When you disrespect me you disrespect my gang.’. . .
“They were all there that day . . . ready to back each other up in whatever happened. In for a dime, they were in for a dollar and they were sticking together.
"... You know, the best indication of what was going on just before the shooting is gleaned by what happened immediately after the fact.... Nothing [was] said to the [gunman], because there was nothing to say. Nobody asked him why he did it. They all knew. They all knew what they were there for. An affront to one is an affront to all.” App. 40-41.
The confusion of the correct and erroneous theories of liability showed up again in the prosecutor’s final rebuttal:
“Mr. Sarausad’s lawyer says that an accomplice has to have the same mental state as the person doing the shooting. . . . Not true, not true. And that’s not what the instruction says.
“And I’ve told you the old adage, you’re in for a dime, you’re in for a dollar. If their logic was correct, they’re not ever an accomplice to anything. The getaway driver for a bank robbery would say, T just told him to rob them, I didn’t tell him to shoot him, I didn’t do anything.’ The example I gave you earlier, T just told my friend to hold the arms down of this person while he hit him, I didn’t tell him to kill him, I’m not guilty of anything.’ If you’re in for a dime, you’re in for a dollar.
“When they rode down to Ballard High School that last time, I say they knew what they were up to. They *204 knew they were there to commit a crime, to disrespect the gang, to fight, to shoot, to get that respect back. A fist didn’t work, pushing didn’t work. Shouting insults at them didn’t work. Shooting was going to work. In for a dime, you’re in for a dollar.” Id., at 123-124.
In the prosecutor’s jumble of rules, one proposition is both clear and clearly erroneous: the statement of law, “in for a dime, in for a dollar.” It unmistakably contradicts the construction for which Sarausad’s counsel correctly argued, which would have required the jury to find that Sarausad understood that the object was killing in order to find him guilty as an accomplice to murder. Id., at 83-84.
The point here is not to excoriate the prosecutor, who tried this case in the period between Roberts and Davis and could fairly assume that her expansive (“in for a dime . . . ”) view of accomplice liability was good law in her State. The point is just the obvious one that cannot be evaded without playing make-believe with the record: an uncertain instruction by the trial judge was combined with confounding prosecutorial argument incorporating what the state courts now acknowledge was a clearly erroneous statement of law, in contrast to the view of the law argued by defense counsel. In these circumstances jury confusion is all but inevitable and jury error the reasonable likelihood.
If there were any doubt about that, one could simply look at the record of the jury’s deliberations, in the course of which the jurors repeatedly asked the court to clarify the law on accomplice liability. They began deliberating on Friday, October 21, 1994, and the following Tuesday, they asked (as to the instructions laying out the crime of first-degree murder and the required premeditation), “does the ‘intent’ apply to (the defendant only) or to (the defendant or his accomplice)?” App. 126. The judge replied, “Refer to instructions 46 and 47 and consider your instructions as a whole.” Ibid. Three days later, October 28, this time in reference *205 to the second-degree murder instructions, the jury enquired a second time about accomplice liability, asking whether “intentional applies] to only the defendant or only his accomplice?” Id., at 128. The judge’s response was nearly identical to his first one: “Refer to instructions 45 & 46 and consider the instructions as a whole.” Ibid. The following Monday, the jury returned to deliberations and requested help yet again, spelling out its confusion: “We are having difficulty agreeing on the legal definition and concept of ‘accomplice.’ . . . [W]hen a person willing[ly] participates in a group activity, is that person an accomplice to any crime committed by anyone in the group?” Id., at 129. Once again, the judge sent the jurors back to the written charge: “Reread instructions ... 45, 46, 47, and 48 and consider your instructions as a whole.” Ibid.
The majority sidesteps the thrust of this record by suggesting that the jurors failed to let the court know of any confusion: it says the jurors’ questions “involved different criminal charges, and implicated the interrelation of several different jury instructions.” Ante, at 196. But this simply ignores the disclosure obviously common to all those questions: the jurors did not understand the state of mind the prosecution had to prove for accomplice liability. Their final question makes this unmistakable.
The majority says, in any case, that the judge’s repeated references back to the written instructions were enough and that “it was not objectively unreasonable for the state court to conclude that [the] jury received the answers it needed to resolve its confusion.” Ibid. But after the jurors asked three times? In many trials, reference back to written instructions would be the best way to answer jurors’ questions, which may reflect uncertain memory, not deficient instruction. But not in this case: the accomplice-liability instruction was defective owing to the ambiguity of the statutory language it incorporated, and its deficiency was under *206 scored by the prosecutor’s erroneous argument. Telling the jurors to read an inadequate instruction three more times did nothing to improve upon it or enlighten the readers. The District Court and the Ninth Circuit drew the only conclusion reasonably possible on this record. I respectfully dissent.

As the majority notes, ante, at 191-192, n. 4, in the Washington Court of Appeals on direct review, Sarausad’s counsel claimed that state law required that an accomplice to murder have a specific intent to kill (or aid in killing). The Court of Appeals rejected this position. Contrary to the *201 majority view, ibid,., in gauging the adequacy of an instruction incorporating statutory terms, the fact that defense counsel may have asked for too much does nothing to lessen the pertinence of opaque state law or its uncertainty in the minds of the state judges. The Court of Appeals in its very response to counsel’s argument demonstrated its misunderstanding of the scope of Washington accomplice-liability law: “accomplice liability predicates criminal liability on general knowledge of a crime.” State v. Ronquillo, No. 35840-5-I etc. (Mar. 2, 1998), App. to Pet. for Cert. 233a, 259a (emphasis added). For that matter, the Court of Appeals subsequently disavowed the very statement used by the majority to support its contention that the court was focused solely on the issue of specific intent. The court, in the postconviction proceedings, concluded that it was in fact necessary for the State to prove Sarausad knew Ronquillo had a gun, or knew there was potential for gunplay that day. Sarausad v. State, 109 Wash. App. 824, 837,39 P. 3d 308, 315 (2001). This knowledge would have been necessary regardless of whether the law required Sarausad to have specific or general intent to kill, unless, of course, accomplice liability was predicated on an “in for a dime, in for a dollar” theory of liability and knowledge of a fistfight could suffice.